NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0063n.06

Nos. 12-2513, 13-1712

**UNITED STATES COURTS OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
***Jan 24, 2014***
DEBORAH S. HUNT, Clerk

DICE CORPORATION

Plaintiff-Appellant,

v.

BOLD TECHNOLOGIES,

Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

**BEFORE: GUY, GIBBONS, and ROGERS, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff-appellant Dice Corporation and defendant-appellee Bold Technologies are competitors that provide services and license software to companies in the alarm industry. Dice claims that Bold committed a host of intellectual property violations when converting one of Dice's former customers to its systems. The district court granted Bold's motion for summary judgment on all of Dice's claims and denied Dice's motions for reconsideration and indicative ruling. For the following reasons, we affirm.

**I.**

**A.**

Dice Corporation and Bold Technologies are in the same business—both license software to companies in the alarm industry. Alarm companies monitor signals sent from their respective subscribers' alarm systems. When an alarm signal is tripped, the alarm company contacts the appropriate authorities such as the police or fire department. Alarm companies collect an impressive amount of data. The data typically consists of names, addresses, contact information,

billing information, and information regarding the type and location of alarms. As a general matter, both companies' software monitors alarm signals and compiles information in databases. Dice's software is known as Dice software; Bold's is licensed under the trade name Manitou.

Despite providing similar services, the technical features of their software are significantly different. By way of quick background, computers operate in a binary number system: 0 for off and 1 for on. Current computers are capable only of executing functions based on this basic language consisting of strings of 1's and 0's. This is known as object code. Computer programming languages—such as C++ and Thoroughbred Basic—facilitate human programming by obviating the need for programmers to write in cumbersome object code. The text of these languages is known as source code. Whether directly or indirectly, the instructions written in source code are ultimately translated into object code so that commands can be executed by the computer. *See generally Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 305 (S.D.N.Y. 2000). Dice software is written using the programming language Thoroughbred Basic and runs on the Linux operating system. Manitou is written in the C++ and Visual Basic languages and runs on the Windows operating system.

**B.**

This dispute stems from a customer defection. ESC Central was a Dice customer for a decade. In 2011, it transitioned to Bold. Switching software systems is no easy task. The conversion process must be undertaken carefully because the alarm company continues to monitor alarm signals from its subscribers. The transition must be seamless to ensure that the new software is interpreting the incoming alarm signal in the same manner as the old so that no alarm signals are misread or missed. As Bold's chief of operations explained:

> After the customer data is extracted and converted, there will be a period of time, usually about 3 months when the customer's central station is running live on the

> old software, but the new software is running in parallel on different servers. The purpose of running the two software systems in parallel is to ensure that the new software is monitoring the alarm signals consistent with the old software. After this period is completed the customer will go live on the new software and will often terminate its license for the old software.

Following this protocol, Bold first extracted ESC Central customer data from Dice's software databases. This data—names, addresses, *etc*.—is owned by ESC Central and not by Dice. Matt Narowski, a current Bold employee and former Dice employee, wrote the computer program ("Extraction Program") used to extract customer data from Dice's database. He explained that he wrote the program using information available to the public together with general knowledge of computer programming; he did not read, review, copy, or rely upon any information about Dice source or object code; the Extraction Program does not contain any Dice source or object code; and, since being employed at Bold, he has not seen a copy of Dice source or object code. And he explained that "the database files where the customer data is stored are not subject to any Dice security features and can be accessed by anyone who has a copy of Thoroughbred Basic, which Bold licensed from that company."

Not so, says Dice. Dice maintains that Bold used and copied Dice's proprietary software in operating the Extraction Program. Clifford Dice stated that he "analyzed the conversion program created by" Narowski and concluded that "[t]he program which Bold has created for converting information belonging to Dice customers cannot operate without access to Dice software and the source code contained within that software."

**C.**

Following extraction, the Bold and Dice software systems were run in parallel from June 2011 to August 2011. Although not aware at the time that ESC Central was converting to Bold's Manitou, Dice subsequently became aware through Facebook activity by ESC Central's vice

president, Kristi Harris Jennings. Immediately thereafter, Dice's Director of Software Development, Julie Coppens, logged into the ESC Central system. She found that someone had accessed Dice's ALSCHART file. Coppens testified that although ESC Central had disconnected Dice, it had not removed access to a phone connection. ESC Central described this as "illegal entering," and sent a cease and desist letter, threatening suit if Dice did it again. Dice, on numerous occasions, admitted that it has no evidence that it was anyone at Bold who accessed the file.

The ALSCHART is a file containing a master list or database of alarm codes. Manufacturers code[1] outgoing alarm signals to identify the type of emergency. For example, a fire signal may be coded "F" by one company and "1" by another. The alarm panel sends these signals to receivers at alarm companies where the information is converted into Dice's standard and compiled in the ALSCHART, a part of Dice's software. Dice's receiver-drivers software performs the conversion from manufacturers' signals to Dice's standard. Dice contends that the ALSCHART and its receiver drivers are proprietary. According to Dice, its standards are unique.

**D.**

On December 5, 2011, Dice filed its operative complaint in the Eastern District of Michigan. Dice asserted claims under Michigan's Uniform Trade Secrets Act ("MUTSA"), Mich. Comp. Laws §§ 445.1901–1910, the Copyright Act, 17 U.S.C. §106, the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 *et seq.*, and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Dice alleged three basic wrongs: (1) Bold's Extraction

[1]These are not computer codes in the same way that object and source code are computer code—*i.e.*, they do not function to allow humans to operate the computer. Alarm codes function as labels indicating the type of alarm.

Program impermissibly accessed and utilized Dice's proprietary code; (2) former Dice employee and current Bold employee Amy Condon accessed Dice servers and initiated file transfers of proprietary software; and (3) Bold circumvented Dice security protections to access protected material.

Clifford Dice was deposed on February 29, 2012. Bold did not provide Dice with a copy of the Extraction Program until May 14, 2012. Bold moved for summary judgment on June 29, 2012, attaching twenty exhibits covering most of the factual material discussed thus far. Dice filed a cursory response. The response relied in large part on an attached affidavit in which Clifford Dice attested that he had "analyzed the conversion program created by former Dice and current Bold employee Matt Narowski." He claimed that the Extraction Program could not "operate without access to Dice software and the source code contained within that software."

Bold's reply attached a rebuttal expert report from Dr. William McUmber. The report analyzed the Extraction Program and concluded that:

> Bold Extract only performs the task of pulling data from the customer's database so that it can be transferred to a different system. . . . Bold Extract does not and cannot read program source code, and does not need to use the Dice source code to perform the data extraction. Bold Extract has no decryption functions, either for data or source code. All of the customer data Bold Extract pulls from the database is unencoded and requires no special handling with decoding functions. No proprietary knowledge is required to write Bold Extract. All of the information that would be needed to write it can be found in ThoroughBred reference guides.

Dice requested that Bold produce Dr. McUmber for deposition prior to filing its summary judgment motion. On this basis, Dice moved to strike Dr. McUmber's report. Dr. McUmber was deposed on September 26, 2012. Dice did not move to file a sur-reply or supplement the record following the deposition. Dice's motion to strike was eventually denied as moot.

The district court rejected Dice's claims in a forty-page opinion, finding them conclusory and devoid of factual support. Dice moved for reconsideration on two grounds. First, Dice claimed that the district court improperly credited the affidavit of Narowski, which Dice claimed was at odds with his deposition testimony. Second, Dice claimed that new evidence—a copy of the "entire extraction program"—was improperly withheld until after Bold filed its motion for summary judgment. Dice claimed that at the time of Dr. McUmber's deposition, Bold produced for the first time the File List used by Bold's Extraction Program (known as "FILELIST.txt"). "Receipt of the entire program," Dice claimed, "permitted [Dice] for the first time to quantify the extent to which [Bold's program was dependent upon Dice source code" and "also permitted [Dice] to disprove the [notion] that [Bold's] extraction program simply utilized commercially-available software produced by Thoroughbred."

Dice attached a comparison highlighting several areas which, Dice claimed, showed literal copying. But as the district court noted in its opinion denying the motion for reconsideration, Clifford Dice did not explain how this evidence demonstrated that Bold used Dice's source code. "Instead he attache[d] a computer printout to his affidavit that [Bold] charitably describes as 'virtually incomprehensible.' . . . The Court's own review, in contrast, finds the document completely incomprehensible." The printout contained hundreds of pages of unexplained computer code. Moreover, the File List on which Clifford Dice's analysis was based was not attached to Dice's motion. Dice claims that the failure to attach this document was inadvertent.

After filing its motion for reconsideration but before the district court ruled on that motion, Dice filed a notice of appeal. Subsequently, the district court denied Dice's motion for reconsideration. Dice did not amend its notice of appeal within 30 days of that date. On May

16, 2013, Dice filed a motion for indicative ruling and relief from judgment pursuant to Federal Rules of Civil Procedure 60(b) and 62.1. Dice asserted that its clerical error in attaching the wrong exhibit caused the district court to deny the motion for reconsideration and asked the district court to enter an order indicating that it would grant Dice's motion for reconsideration if the court of appeals remanded for that purpose. The district court denied the motion, holding that Dice again failed to explain how the proffered evidence demonstrated that Bold misappropriated its property.

Dice filed an amended notice of appeal within 30 days of the denial of its motion for indicative ruling expressly seeking review of the order granting Bold's motion for summary judgment and the order denying Dice's motion for indicative ruling; it did not seek review of the reconsideration order.

**II.**

The first question is one of jurisdiction. Dice attempts to appeal the district court's denial of its motion for indicative ruling. Under Rule 62.1, a district court may make certain indicative rulings on motions that the court lacks authority to grant because of a pending appeal. A district court may defer considering the motion, deny the motion, or state that it would grant the motion or that the motion raises a substantial issue. *See* Fed. R. Civ. P. 62.1(a).

Corresponding to Rule 62.1 is Federal Rule of Appellate Procedure 12.1. Rule 12.1(b) provides that "if the district court states that it would grant the motion or that the motion raises a substantial issue, the court of appeals may remand for further proceedings." Bold argues that because Rule 12.1(b) does not expressly provide for circumstances in which the district court denies a motion for indicative ruling, courts of appeal lack jurisdiction to entertain appeals from such motions. We are unaware of any case which so holds. *See* Fed. R. App. P. 12.1 advisory

committee's notes (citing *Jordan v. Bowen*, 808 F.2d 733, 736–37 (10th Cir. 1987) (refusing to review order denying motion for indicative ruling where party failed to appeal from that order)); *see also Ray v. Pinnacle Health Hosps., Inc.*, 416 F. App'x 157, 161 (3d Cir. 2010) (reviewing denial of motion for indicative ruling). Nor do we believe Rule 12.1 requires a party to wait until its initial appeal is adjudicated, file a new Rule 60(b) motion, and then appeal that motion's denial. Rule 12.1 does not foreclose our review.

Next is Dice's unappealed motion for reconsideration. In its amended notice of appeal, Dice did not mention the order denying its motion for reconsideration. Bold argues that under Federal Rule of Appellate Procedure 4(a)(4)(B)(ii) and this court's opinions construing that rule, we lack jurisdiction to review the order denying reconsideration as well as the evidence put forward in Dice's motion.

Rule 4's strictures are jurisdictional. *See, e.g.*, *Browder v. Director*, 434 U.S. 257, 264 (1978). It provides in part that a party challenging an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment's alteration or amendment upon such a motion, must file a notice of appeal. Fed. R. App. P. 4(a)(4)(B)(ii). Rule 3(c)(1)(B), with which Rule 4(a)(4)(B)(ii) requires compliance, requires the designation of the judgment or order from which an appeal is taken. *See United States v. Universal Mgmt. Servs., Inc.*, 191 F.3d 750, 756 (6th Cir. 1999 (citing Fed. R. App. P. 3(c)(1)(B)). Although jurisdictional, the notice requirements of Rule 3(c)(1) are liberally construed and applied. *See Caudill v. Hollan*, 431 F.3d 900, 907 (6th Cir. 2005) (citing *Foman v. Davis*, 371 U.S. 178, 180–81 (1962)).

We consider all arguments asserted prior to the final disposition of a case if the party indicates in its notice of appeal that it appeals either the final judgment or the final order. *Id.* at 906. Where the notice of appeal limits the orders appealed, we will not, "absent specific mention

in the notice of appeal, entertain issues raised in post-judgment motions." *Id*. However, "[t]o the extent that the post-judgment motions relate to issues raised before judgment, the appellate court will deal with them anyway." *Id*. Although the case law speaks of issues raised before the "final order" or the "final judgment," there is no principled reason to hold that this language bars consideration of issues raised before the last order appealed. The only concern motivating this jurisprudence is compliance with the Federal Rules of Appellate Procedure's notice requirement. *See id.* Parties receive the same notice of the issues on appeal whether they were raised in a notice of appeal of a motion granting summary judgment or subsequent motion for indicative ruling. What matters is that the issues flagged in the notice of appeal have already been raised. The dividing line is the last appealed judgment: issues raised before the last appealed judgment will be considered, issues raised after will not. Here, the last appealed judgment was the motion for indicative ruling.

Dice raised two issues in its motion for reconsideration. The first issue was whether the district court erred in relying on Narowski's affidavit. This issue was before the district court in Bold's motion for summary judgment. The second issue was whether Bold's untimely production of the File List prevented Dice from demonstrating that Bold misappropriated its copyrighted source code. Dice's motion for indicative ruling argued that the district court erred in denying the motion for reconsideration because Dice inadvertently attached the wrong exhibit. The motion for indicative ruling, relying on the same arguments and evidence and the properly attached exhibit, sought to cure that defect. Indeed, it would be impossible to consider the motion for indicative ruling—which was properly appealed—without considering the motion for reconsideration. Accordingly, this court has jurisdiction to consider the issues and facts raised in Dice's motion for reconsideration.

**III.**

It is the parties, in our adversarial system, who frame the issues before the court. This is true of both factual and legal arguments. The rules of civil procedure and standards of appellate review acknowledge this. The nub of this dispute is the district court's summary judgment order. Rule 56(c) requires a party objecting to a motion for summary judgment to support its assertions by "citing to particular parts of materials in the record." Accordingly, we do not "'entertain on appeal factual recitations not presented to the district court' when reviewing a district court's decision." *Chi. Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 995 (6th Cir. 2007) (quoting *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992)). The "proper focus is on the factual evidence submitted below." *Id*. at 996; *Cacevic v. City of Hazel Park*, 226 F.3d 483, 491 (6th Cir. 2000) ("Although [plaintiffs] proffered evidence that might or might not show a genuine issue of material fact after the district court had granted the defendants' motion for summary judgment, that evidence will not be considered by us on review."); *Estate of Mills v. Trizec Props.*, 965 F.2d 113, 115 (6th Cir. 1992). "This burden to respond is really an opportunity to assist the court in understanding the facts. But if the non-moving party fails to discharge that burden . . . its opportunity is waived and its case wagered." *Guarino*, 980 F.2d at 405.

The same is true of legal arguments. This court requires "timely and reasoned presentation of non-jurisdictional issues to avoid forfeiture." *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1006 (6th Cir. 2009). "It is well-settled that this court's 'function is to review the case presented to the district court, rather than a better case fashioned after an unfavorable order.'" *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) (internal alterations and quotation marks omitted) (quoting *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th

Cir. 2005). Arguments not squarely presented to the district court are not reviewed on appeal. *See, e.g.*, *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1172 (6th Cir. 1996).

With these parameters in mind, we review the district court's order granting summary judgment *de novo*, *see Crouch v. Honeywell Int'l Inc.*, 720 F.3d 333, 338 (6th Cir. 2013), and, treating a denial of indicative relief as we would a Rule 60(b) motion, we review the district court's order denying Dice's motion for indicative ruling for abuse of discretion, s*ee Ray*, 416 F. App'x at 161 n.3. As will be discussed in greater detail below, Dice's appeal suffers from both aforementioned ailments—it presents new legal arguments supported by previously unmentioned record evidence.

**IV.**

**A.**

Dice argues that the district court erred in granting summary judgment to Bold on the MUTSA claim. A claim for misappropriation of trade secrets, as the cause of action suggests, requires: (1) a trade secret; and (2) misappropriation. *See* Mich. Comp. Laws § 445.1902.[2]

A trade secret consists of two component parts. It is information that derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from its disclosure or use. *Id.* § 445.1902(d). And the information must be the subject of reasonable efforts under the circumstances to maintain its secrecy. *Id.* As a general matter, trade secret law does not protect "an idea which is well known or easily ascertainable." *Manos v. Melton*, 100 N.W.2d 235, 238 (Mich. 1960). "Trivial advances or differences in formulas or process operation are not

[2]The district court and the parties rely on *Stromback v. New Line Cinema*'s articulation of a three-part trade secret claim. 384 F.3d 283, 302 (6th Cir. 2004). *Stromback* explicitly stated that the three-element trade-secret claim was the common-law claim and that the common-law claim was displaced by MUTSA. *Id.*

protectable as trade secrets." *Id.* at 239 (internal quotation marks omitted); *Agency Solutions.Com, LLC v. Trizetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011) ("Proprietary ways of doing the same thing that others in the same field do are not trade secrets."). "Of critical importance here, to be worthy of trade secret status, the secret information must afford the owner a competitive advantage by having value to the owner and potential competitors." *Daimler-Chrysler Servs. N. Am., LLC v. Summit Nat'l, Inc.*, 289 F. App'x 916, 922 (6th Cir. 2008) (applying MUTSA).

MUTSA defines misappropriation as acquisition, disclosure, or use of a trade secret by a person who knows or has reason to know that the trade secret was acquired by improper means. *See* Mich. Comp. Laws § 445.1902(b).

Dice argues that Bold misappropriated two trade secrets: (1) the ALSCHART; and (2) its receiver drivers software.

**1.**

Dice argues that the district court erred in concluding that the data obtained from the ALSCHART file via the Thoroughbred query was not a trade secret. Again, the ALSCHART is a file containing a master list or database of alarm codes. Dice argues that because the ALSHCART contains codes converted to Dice's standards, the ALSCHART was subject to trade secret protection.

Dice fails to explain how this information, even if uniquely coded, is a trade secret. The ALSCHART is a compilation of labelling codes created by manufacturers, not Dice. The codes were collected by Dice's customers, not Dice. Dice has not put forward an explanation of how the value of its unique labelling is derived from it not being readily ascertainable by proper means. And Dice has not produced any evidence to that effect. *See* Mich. Comp. Laws §

450.1902(d); *see also Daimler-Chrysler*, 289 F. App'x at 922 (plaintiff bears the burden to produce sufficient evidence to suggest that information derives independent economic value secrecy); *Utilase, Inc. v. Williamson*, 188 F.3d 510, 1999 WL 717969, at *6 (6th Cir. Sept. 10, 1999) (plaintiff must identify trade secret with specificity); *Dura Global Techs., Inc. v. Magna Donnelly Corp.*, 662 F. Supp. 2d 855, 859 (E.D. Mich. 2009) (same).

In addition, Dice failed to present competent evidence of misappropriation to the district court. Noting the fact that Dice did not cite *any* record evidence, the district court granted Bold's well-supported motion for summary judgment. Dice, for the first time on appeal, cites record evidence that it claims supports a finding of misappropriation. We do not, however, "entertain on appeal factual recitations not presented to the district court any more readily than [we] will tolerate attempts to enlarge the record itself." *Guarino*, 980 F.2d at 404. The district court did not err in rejecting Dice's conclusory allegations of misappropriation in the face of competent evidence to the contrary. *See* Fed. R. Civ. P. 56(c).

**2.**

Dice also argues that its software is a trade secret. Specifically, Dice claims that Bold misappropriated its receiver drivers that take incoming signals and convert the data to Dice's standard. Although Dice's briefing on this claim is opaque, we are skeptical whether Dice raised this claim before the district court. Neither in the operative complaint nor in Dice's response to Bold's motion for summary judgment can we find a trade secret claim based on receiver drivers or software that performs that function. In Bold's motion for summary judgment, Bold discussed only the ALSCHART as material potentially subject to trade secret protection. In response, Dice referred only to software that compiles information—a description consistent with the ALSCHART's function and not the receiver drivers. The district court then treated the

ALSCHART file as the subject of Dice's trade secret claim in its order granting summary judgment. Had the district court made so plain an error in failing to consider an entirely independent trade secret claim, we would expect Dice to mention that in its motions for reconsideration or indicative ruling. It did not.

Even if not forfeited for this reason, Dice's claim is defective for two independent reasons. First, as discussed above, Dice failed to present competent evidence of misappropriation to the district court. Second, much like the ALSCHART claim, Dice has never put forward any evidence, let alone make the argument, that its receiver drivers are actually a trade secret. Other than a generalized explanation of what the receiver drivers do, Dice has failed to explain whether the receiver drivers derive economic value from their secrecy.

**B.**

Dice alleges that to undertake the extraction process, Bold created an unauthorized derivative work in violation of the Copyright Act, 17 U.S.C. § 106(2). 17 U.S.C. § 411(a) provides: "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." In *Reed Elsevier, Inc. v. Muchnick*, the Supreme Court clarified that this requirement is a precondition to suit and not a jurisdictional rule. 559 U.S. 154, 161 (2010).

Dice did not seek copyright protection until after it filed suit.[3] We do not decide whether late registration can cure this non-jurisdictional defect. *See Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 365 (5th Cir. 2004), *abrogated by Reed Elsevier*, 559 U.S. at 157. Dice's claim fails for a separate reason. Not all copying amounts to copyright

[3]Dice's reliance on *Coles v. Wonder*, 283 F.3d 798, 801 (6th Cir. 2002), is misplaced. *Coles* stands for the unremarkable proposition that although an action for infringement cannot be enforced until § 411's filing requirements have been satisfied, copyright protection extends retroactively to the time the artist creates the work. *Id*.

infringement. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Allowing that registration constitutes *prima facie* evidence of the copyright's validity, *see* 17 U.S.C. § 410(c)[4], the plaintiff must still prove "that the defendant copied protectable elements of the work." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004); *see also Feist*, 499 U.S. at 361. Only original material is subject to copyright protection and, even then, elements of a computer program dictated by practical realities may not be protectable. *See Lexmark*, 387 F.3d at 535.

Dice has not attempted to demonstrate which aspects of its programs were protectable. Dice does not identify any original elements in its software and does not argue that the receiver drivers represent non-functional expression. Irrespective of how unique the Dice standard or its source code, the district court was right not to find a fact question on the basis only of Dice's say-so. Dice attempts to explain its failure to produce any such evidence by pointing to the fact that Bold belatedly produced the File List document, which, according to Dice, finally allowed it to inspect Bold's Extraction Program. But in its motion for reconsideration and in its motion for indicative ruling, Dice failed to identify the original and non-functional elements of its work. Instead, it provided hundreds of pages of incomprehensible computer code without explanation other than Clifford Dice's claim that "Bold's extraction program utilized Dice source code in the conversion process."

[4]Dice does not make this argument. Moreover, at least at the time Dice filed suit, it was not entitled to this benefit of registration. And finally, Dice does not claim a copyright in the ALSCHART, only in its receiver drivers.

**C.**

Dice asserts on appeal that Bold violated the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a), because customers allowed Bold to use their passwords to login to the Dice servers through the "Go To Assist function."

For two reasons this claim fails. First, Dice did not cite any evidence of circumvention of technological measures to the district court. The district court rejected Dice's claim for this reason. Likewise on appeal, to the extent we are inclined to allow Dice to resurrect its argument, Dice cites no evidence. Second, Dice's general theory before the district court was that Bold circumvented Dice's attempts to encrypt its software. Dice now argues that Bold violated the DMCA because ESC Central improperly allowed Bold to use its passwords to login to the Dice software operating at the customer's site through the Go To Assist function. This is a new argument not appropriately considered on appeal.

**D.**

Dice argues that the district court erred in dismissing its private cause of action under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. 1030(g).[5] Generally, the CFAA protects against unauthorized computer access. Dice puts forward a complex claim of unauthorized access. It claims that, although ESC Central's servers running Dice software were owned by ESC Central, they were connected to the Dice disaster recovery network at Dice's office in Michigan. According to Dice, customer-owned servers, like the ESC Central server running the Dice software, were actually a branch of Dice's network. This is because, when a Dice system is installed, Dice's Michigan servers mirror its customers' servers. Consequently, according to Dice, when Bold employees accessed ESC Central servers they necessarily accessed the Dice

[5]Dice does not clarify under which subsection it brings its claims, but this is ultimately irrelevant.

disaster recovery network. This argument, like many before, was not fairly made to the district court.[6]

Even assuming this claim were fairly raised, it would still fail. Liability under the CFAA requires a showing of intentional access. 18 U.S.C. § 1030(a)(2). Neither Narowski nor Condon was aware that performing a Go To Assist Function on ESC Central servers allowed access to Dice servers in Bay City, Michigan. Dice also does not explain how, even if the Go To Assist function allowed access to Dice servers, Condon or Narowski used the Go To Assist function to obtain Dice source code. *See* 18 U.S.C. § 1030(e)(6). Condon explains:

> If permission is granted by the customer, the Go To Assist function allows me to view the computer screen of the customer from Bold's Colorado office and to perform commands on the customer's computer. . . . The result is the same as if I was at the customer's office and the customer allowed me to sit at their computer terminal and view their computer screen. . . .
>
> Using Go To Assist I was able to view ESC's computer screens for the ESC server running Dice and the ESC server running Bold to help diagnose [a] discrepancy in the signal interpretations. As far as I am aware, the Go to Assist function would not allow myself or any other Bold user to access Dice source code in the Dice software running on ESC's servers and I have never used Go To Assist for that purpose."

And Narowski attested: "With GoToAssist I cannot access any Dice source code even if the Dice software is running on the customer's computer which grants access and I have never used

---

[6]Dice's response to Bold's motion for summary judgment stated: "gotoassist enabled Mr. Narowski and any other qualified Bold employee to access Dice servers without alerting Dice." Dice did not explain that this occurred through the mirroring function of the disaster recovery network nor did Dice cite any evidence for that claim. On appeal, Dice points to the fact that in an affidavit attached as an exhibit, Clifford Dice explained the mirroring function. But the district court was not required to comb through the uncited record to make sense of Dice's claim and, at the very least, Dice was obligated to *explain* the factual basis for its claim to the district court. *See Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008).

GoToAssist to access any Dice source code." As for Dice's claim that Condon accessed Dice's servers to acquire the ALSCHART file, Dice has not presented any evidence.

## V.

For the foregoing reasons, we affirm the district court's grant of Bold's motion for summary judgment and its denial of Dice's motion for indicative ruling.